## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MICHAEL MCLAUGHLIN,           **:**

                             **:**

      v.                   **:**

                             **:**   Civil Action No. CCB-04-767

KEVIN MURPHY, et al.,        **:**

                             **:**

...o0o...

### MEMORANDUM

Michael McLaughlin ("McLaughlin") filed this suit against Kevin Murphy and Freedmont Mortgage Corporation ("Freedmont") asserting claims under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§201 *et seq*. and Maryland state law.  On December 15, 2004, he filed a motion for summary judgment as to the defendants' claim that McLaughlin was an outside salesman, exempt from the minimum wage and overtime provisions of the FLSA.  See 29 U.S.C. §206; 29 U.S.C. §207; 29 U.S.C. §213.  The defendants filed their cross-motion for summary judgment on December 27, 2004.  Oral argument was heard on April 26, 2005.  For the reasons that follow, McLaughlin's motion will be denied and Freedmont's will be granted.

### BACKGROUND

McLaughlin was employed as a loan officer for Freedmont from August 2001 through November 2003.  His job entailed contacting clients and suggesting appropriate loan and interest rate products for them.  McLaughlin was paid straight commissions on the loans he sold in accordance with his employment contract.[1]  (Pl.'s Mot. for Summ. J., Murphy Dep. at 115; id., Delmont Dep. at 27; id.,

---

[1]Prior and subsequent to his employment at Freedmont, McLaughlin has worked as a loan officer and has been paid only commissions.

Ex. 1, Employee Handbook.)  He never received or demanded hourly wages.

Though McLaughlin solicited his own clients, he was also given leads that were generated by Freedmont's advertising.  (Def.'s Mot. for Summ. J. at 15 (citing McLaughlin Dep. at 18.))  For that reason, McLaughlin was obligated to spend one day each week in Freedmont's offices to field phone calls from customers seeking to learn more about Freedmont's loans.  (Id. at 14-15.)  Otherwise, McLaughlin was free to work from home or elsewhere. (Id. at 16 (citing McLaughlin Dep. at 20-21.)) McLaughlin also determined the number of hours he worked each day.[2]  Carl Delmont, the Chief Operating Officer of Freedmont, testified that Freedmont was open for operation between 9 a.m. and 7 p.m. but that loan officers would frequently work as late as 9 p.m.  (Pl.'s Mot. for Summ. J., Delmont Dep. at 71.)

In order to make a sale, McLaughlin could either approach a potential client in person with the loan documents and ask them to complete the loan application, or he could mail documents to the client and wait for a response.  (Id. at 74-75; 109.)  If he so chose, McLaughlin could meet potential clients in the conference room at Freedmont's offices.  (Pl.'s Mot. for Summ. J., Murphy Dep. at 123-124.) Freedmont alleges and McLaughlin acknowledges that Freedmont recommends its new hires go out to meet potential new clients (Def.'s Mot. for Summ. J. at 16 (citing McLaughlin Dep. at 20.))  In the same manner, Freedmont maintains that it discourages mailing documents, even though it provides the mailing supplies and brochures, because it believes the mail is an ineffective sales tool.  (Pl.'s Mot. for

---

[2]There is some evidence in the record that Murphy, Freedmont's president, required officers to work at least "two night[s] per week until 8"  (Pl.'s Mot. for Summ. J., Murphy Dep. at 135-136; id., Ex. 2, Manner e-mail), and that he warned loan officers they would lose their job if they were not working a sufficient number of hours.  (Id. at 113.)

Summ. J., Delmont Dep. at 117.)

Freedmont did not maintain records of the people McLaughlin met or sent loan applications to if they did not close a loan. (Pl.'s Mot. for Summ. J., Murphy Dep. at 118-119.) McLaughlin also did not keep any records of the time he worked. Murphy, relying on his memory, asserts that McLaughlin did not work more than 40 hours a week in the office. (Id. at 169.) However, Delmont wrote on McLaughlin's health insurance form that he worked "40+" hours per week. (Pl.'s Mot. for Summ. J., Delmont Dep. at 139; Ex. 4, Election Form.) Delmont explains that he wrote this only because McLaughlin would not be eligible for health insurance unless the insurance company understood that McLaughlin was a full-time employee. (Defs.' Mot. for Summ. J., Delmont Aff. at ¶ 7.) Delmont states that he had no other way to demonstrate that to the insurance company on the form.[3] (Id.)

McLaughlin received no pay during 8 different biweekly pay periods in 2001, 2002, and 2003 because he did not have any commissions for those pay periods. (Pl.'s Mot. for Summ. J., Murphy Dep. at 155-156; 160-163.) Murphy explained that McLaughlin's failure to make sales at those times could have been attributable to difficult business conditions. (Id. at 161-162.) Overall, McLaughlin earned $10,697.15 from August 2001 to December 2001; $67,649.41 for calendar year 2002; and $82,994.97 from January to November 2003. (Defs.' Reply in Supp. of Mot. to Dismiss, Delmont Aff. at ¶ 3.)

McLaughlin instituted a five-count action against Kevin Murphy and Freedmont on March 17, 2004. On July 20, 2004, this court granted the defendants' motion for summary judgment on Counts

---

[3]In any event, this form was completed in 2001 and is at best an estimate of future hours of work rather than a record of actual hours.

Three and Four and their motion to dismiss as to Count Five. McLaughlin v. Murphy, 372 F.Supp.2d 465 (D. Md. 2004)(opinion incorporated herein by reference). Pending discovery, the court denied without prejudice the defendants' motion for summary judgment as to Counts I and II, which alleged violations of the FLSA, 29 U.S.C. §201 et seq. McLaughlin now claims that at various times during his employment, he worked more than forty hours per week without receiving overtime pay in violation of 29 U.S.C. §207. He also maintains that for approximately sixteen weeks of his employment, he was not compensated at all, let alone the statutory minimum wage provided in 29 U.S.C. §206.

## ANALYSIS

### I.

Freedmont contends that it is not bound by the requirements of §206 and §207 because the FLSA exempts McLaughlin, an "outside salesman," from those provisions. See 29 U.S.C. §213. An outside salesman is defined as an employee: (1) who is employed for the purpose of and who is customarily engaged away from the employer's place of business in making sales or obtaining orders or contracts for services; and (2) whose hours of work of a nature other than that just described do not exceed 20 percent of the hours worked in the workweek by nonexempt employees of the employer.[4]

---

[4]The regulation that defines "outside salesman" was changed effective August 23, 2004. See 69 FR 22122, 22267-22268. The new rule removes the restriction that outside sales employees cannot do inside sales work for more than 20% of the hours worked in a week by nonexempt employees. This revision was made for consistency with the other exemptions under section 13(a)(1) of the FLSA and because "the current outside sales 20-percent restriction is particularly complicated and confusing since it relies on the work hours of nonexempt employees and requires tracking the time of employees who, by definition, spend much of their time away from the employer's place of business." 69 FR 22122, 22160. However, because this case was filed prior to the modification, the 20% restriction applies.

See 29 C.F.R. §541.500(a)-(b); 26 A.L.R. Fed. 941.  Work performed incidental to and in

conjunction with the employee's own sales or solicitations, however, is not considered nonexempt

work that counts towards the 20 percent limit.  29 C.F.R. §541.500(b).

The regulations further provide that an outside sales employee makes sales at the customer's

place of business or home.  29 C.F.R. §502(b).  If a salesperson uses his/her home to conduct

business,  it is considered the employer's place of business for these purposes.  Id.  In addition, sales

made via mail, telephone, or the internet are not outside sales.  Id.

Because the employee's exempt status is an affirmative defense, the employer bears the burden

of proving the exemption by clear and convincing evidence.  Stricker v. Eastern Off Road Equip., Inc.,

935 F.Supp. 650, 653-54 (D.Md. 1996).  The FLSA exemption must be narrowly construed against

the employer who asserts it.  U.S. Dept. of Labor v. North Carolina Growers Ass'n, 377 F.3d 345,

350 (4th Cir. 2004); Stricker, 935 F.Supp. at 654.

Freedmont must show that McLaughlin was primarily engaged in outside sales and that any

inside sales he conducted were less than 20% of the hours worked in a week by nonexempt employees

at Freedmont.  However, neither Freedmont nor McLaughlin kept records of McLaughlin's time.

There is no independent evidence that would demonstrate what percentage of his time McLaughlin

spent doing sales outside the office as compared to sales he did by phone, mail, or in the office. Though

Freedmont does supply a list of all the loans McLaughlin closed in 2003, it has no way of accounting

for McLaughlin's time on any of those loans or on any sales pitches that did not succeed.[5]  Thus,

_____

[5]McLaughlin argues that even the list produced by Freedmont does not indicate he spent the
bulk of his time on exempt work.  There is no information as to how much time was spent at the loan

McLaughlin contends that Freedmont fails to satisfy its burden of proof for its affirmative defense.

On the other hand, Freedmont insists that a case-by-case analysis must be done to determine whether an employee falls within the exemption. Nielsen v. Devry, Inc., 302 F.Supp.2d 747 (W.D. Mich. 2003). Freedmont lists various indicia, used in Nielsen, Hodgson v. Krispy Kreme Doughnut Co., 346 F.Supp. 1102 (M.D.N.C. 1972), Fields v. AOL Time Warner, Inc., 261 F.Supp.2d 971 (W.D.Tenn. 2003), and Jewell Tea Co. v. Williams, 118 F.2d 202 (10th Cir. 1941) that are considered in the decision as to whether an individual is an outside salesman. These include: first, the employee not only sells to existing customers but solicits new business. McLaughlin did accomplish this by generating his own leads and fielding calls that were generated by advertisements. (Def.'s Mot. for Summ. J. at 15 (citing McLaughlin Dep. 18-19.)) Second, the employee was hired as a salesperson and has that title. McLaughlin states that he was hired as a salesperson, and so does his employment contract. (Id. at 7-8 (citing McLaughlin Dep. at 16, 12.)) Third, the employee is paid entirely or primarily from commissions on sales he makes. (Id. at 8 (citing McLaughlin Dep. at 12.)) Fourth, the employee decides his own work schedule and the number of hours to be devoted to serving his sales territory. McLaughlin testified that he set his own schedule and indeed he changed his routine in May/June 2003 to spend more time away from the office when his relationship with another employee in the office ended. (Id. at 16 (citing McLaughlin Dep. at 20-21.)) Fifth, the employer does not direct, monitor, or supervise the employee.[6] (Pl.'s Mot. for Summ. J., Murphy Dep. at 124; id., Delmont Dep. at 101.)

---

closing appointments or where they took place. Presumably, each client solicited by mail took less of McLaughlin's time than each client he met in person.

[6]Freedmont stresses this factor: it hired McLaughlin with the understanding that he was in charge of his own time. See Jewell Tea, 118 F.2d at 208.

Quoting <u>Nielsen</u>, Freedmont argues that the indicia should be considered together to determine if the employee is an outside salesman.[7]  302 F.Supp.2d 747, 756.

While it is clear that McLaughlin was engaged in sales activity, it is less clear whether that sales activity was regularly engaged in away from the employer's place of business.  Moreover, under the regulation as it existed when this case was filed, Freedmont must show that McLaughlin only worked on inside sales work for less than 20% of the hours worked in a week by nonexempt employees.  There is not sufficient evidence in the record to support that assertion.[8]  Accordingly, I will assume for purposes of this opinion that Freedmont has failed to show that McLaughlin met the definition of an "outside salesman."

<u>II.</u>

McLaughlin has the burden of establishing the hours he claims to have worked and the work he claims to have performed for which he was not paid.  <u>See</u> <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328

---

[7]McLaughlin contends that he was not engaged in sales at all when he met clients in person because, he claims, he had already worked the details out over the phone and was only going to deliver the documents. This argument is unpersuasive, because execution of the documents is an integral and essential part of the sale.  Similarly, McLaughlin's argument that he was not a salesman when he received no pay is unconvincing.  As Freedmont responded, McLaughlin is still a salesman when he closes no loans, although he may be an unsuccessful salesman.

[8]Some cases avoid this requirement by deciding whether an individual employee worked on inside sales work for less than 20% of his working time.  The regulation, however, requires an evaluation of the individual employee's time based on the time of his nonexempt colleagues.  <u>See</u> 29 C.F.R. 541.500(b).  If Freedmont had established that all employees, exempt and non-exempt, worked the same number of hours, the standard could be equated.  Freedmont did not do so.  (<u>See</u> Pl.'s Mot. for Summ. J., Murphy Dep. at 124.)  The hours listed in the employee handbook (<u>Id</u>., Ex. 1) are not relevant for these purposes, as Delmont explained that the handbook had never been updated since the company had grown and compensation had been changed from salaried employees to those paid based on commissions.  (<u>Id</u>., Delmont Dep. at 71.)

U.S. 680, 686-687 (1946); Turner v. Human Genome Sciences, Inc., 292 F.Supp.2d 738, 748

(D.Md. 2003).  In a situation, such as this, where the employer does not have records of the

employee's hours, "an employee has carried out his burden if he proves that he has in fact performed

work for which he was improperly compensated and if he produces sufficient evidence to show the

amount and extent of that work as a matter of just and reasonable inference."  Anderson, 328 U.S. at

687.   McLaughlin does not need to give exact evidence of the hours he worked.  See Pforr v. Food

Lion, Inc. 851 F.2d 106, 108 (4th Cir. 1988); Turner, 292 F.Supp.2d at 747, Donovan v. Kentwood

Dev. Co., Inc., 549 F.Supp. 480, 485 (D.Md. 1982).  After McLaughlin produces his evidence, the

burden shifts to Freedmont to negate the inference drawn from McLaughlin's proffer.  "If the employer

fails to produce such evidence, the court may then award damages to the employee, even though the

result be only approximate."  Anderson, 328 U.S. at 688.

Neither Freedmont nor McLaughlin kept records of McLaughlin's hours.  Likewise,

McLaughlin has offered no proof that he actually worked during the 16 weeks in which he closed no

loans and did not receive a paycheck.  The two parties dispute McLaughlin's deposition testimony in

which McLaughlin was asked if he remembered how many hours he worked for which he was not

paid.  (Def.'s Mot. for Summ. J. at 6-7 (citing McLaughlin Dep. at 23-24.))  McLaughlin responded

that he did not know how many hours he had worked.  Thus, Freedmont argues that McLaughlin has

not satisfied his burden of showing the amount and extent of work he performed for which he was not

paid.

McLaughlin contends, however, that he attempted to give an estimate but was cut off by

opposing counsel.  (Pl.'s Consolidated Reply at 7; Id., McLaughlin Aff.at ¶ 2.)  He argues that he

8

believed Freedmont's counsel was asking if he recalled his hours from specific weeks, which he did

not.  However, McLaughlin maintains that he had testified earlier in his deposition that his typical

workday was 11:00 a.m. to 7:00 p.m. or 12:00 p.m. to 8:00 p.m. (Pl's Consolidated Reply,

McLaughlin Dep. at 22.)  I will assume that McLaughlin's interpretation of his deposition testimony as

stating that his work hours were "something like" 11 to 7, or 12 to 8  is correct.  This is nonetheless an

imprecise estimate that amounts to a 40-hour work-week.

McLaughlin's interrogatory response to Freedmont stated that his work week hours ranged

from 40 to 55 hours a week.  (Id., Mclaughlin Aff. at ¶ 4.)  That estimate, averaged out to 47 hours a

week, appears to be the principal, if not the only, basis on which McLaughlin would calculate his

"uncompensated" hours. McLaughlin argues that his estimates are sufficient for a "just and reasonable

inference" of time worked without proper compensation, see Donovan, 549 F.Supp. at 485-486;

Freedmont responds that estimates may be sufficient but speculation is not. See Jax Beer Co. v.

Redfern, 124 F.2d 172, 175 (5th Cir. 1941)(refusing to base an award upon the "guess, speculation,

and averages made up from the uncertain recollections of these appellees.")  Moreover, the Fourth

Circuit has held in Pforr that the employee must show that the employer knew about the overtime hours

and permitted the employee to work those extra hours.  851 F.2d at 109-110.  McLaughlin has

admitted that he never reported his hours to Freedmont and Freedmont did not supervise his work.  He

has not shown any awareness on Freedmont's part of any specific amount of uncompensated hours that

he worked.

Based on the record, McLaughlin cannot meet his burden of showing as a matter of "just and

reasonable inference," either the uncompensated hours he worked, or the number of uncompensated

hours Freedmont "suffered" or "permitted" him to work.  Accordingly, his motion for summary

judgment will be denied, and Freedmont's will be granted.


A separate Order follows.



    July 26, 2005                                 /s/                  
Date                                           Catherine C. Blake
                                           United States District Judge